Moncure, P.,
delivered the opinion of the court.
The court is of opinion that the following may be laid down as sound and well settled principles of law, and are applicable to this case, viz:
1st. A married woman is regarded by a. court of equity, as the owner of her separate estate; and, as a general rule, the jus disponendi is an incident to such estate; that is, it is an incident thereto, unless, and ’except so tar as it is denied or restrained by the instrument creating the estate.
2d. But it is subject to such limitations and restrictions as may be contained in such instrument; which may give it sub modo only, or withhold it altogether.
3d. In regard to separate personal estate, and the rents and profits of separate real estate, this power of disposition, if it be unrestrained, may be exercised in the same way, by deed, will or otherwise, as if the owner were a feme sole. But in regard to the corpus of separate real estate, it can be disposed of only in such mode, if any, as may be prescribed by the instrument creating the estate; or, unless prohibited by such instrument, in the mode prescribed by law for the alienation of real estate by married women.
4th. While the rents and profits of a wife’s separate real estate remain subject to her power of disposition as personal estate so long as they continue in that form, yet, when they are, by the wife, or by her direction, converted into realty, such realty can be disposed of only as other separate real estate of a married woman; that is, in the mode, if any, prescribed by the instrument by which it is conveyed to her or to trustees for her separate use; or, unless prohibited, or except so far as it may be restrained by the instrument, in the mode prescribed by law for the *401 alienation of real estate of married women. She may-have the realty, acquired by means of such rents and profits, conveyed for her separate use, subject to any restrictions she may choose to prescribe in regard to the mode of alienation, or, -if she prefer it, without restriction at all.
Other principles of law on the subject, no less sound or well settled, might here be laid down, but it is unnecessary for the principles of this case. Hor is it necessary in this case to express any opinion upon the much vexed and yet unsettled question, whether, where the instrument creating the separate estate, prescribes a mode of disposing of the estate, that mode is in exclusion of any other; upon the principle of expressio unius est exclusio alterius. Certainly, the instrument may, either expressly or by plain implication, exclude any other.
The court is further of opinion that in regard to the two hundred acres of land in the county of Augusta, conveyed by the deed of the 21st day of July, 1856, in the proceedings mentioned between Samuel B. Brown of the first part, Mary Ann Brown, his wife, of the second part, and Thomas J. Michie and Wm. H. Harman of the third part, the said land could be disposed of either by an act to take effect during her lifetime, or by an act to take effect after her death. The only mode by which it could be disposed of, in order that such disposition might take effect during her life was under that trust of the deed which declares that the “ said Mary Ann Brown may by writing, under her hand and seal, attested by two witnesses, or acknowledged before a justice of the peace, direct said trustees (Michie and Harman) to sell said tract of land, or any part thereof; but said trustees shall invest and hold the proceeds of said tract of land for the sole use *402 and benefit of said Mary Ann Brown as aforesaid.” The only modes by which it could be disposed of, in order that such disposition might take effect after her death, was under that trust of the deed which declares that, on the death of the said Mary Ann Brown, the said trustees shall convey said tract of land, or dispose of the proceeds thereof, if it, or any part of it, should be sold during her lifetime, as the said Mary Ann Brown shall direct, by will duly executed as if she were a feme sole, or by other writing attested by at least three witnesses.”
The deed expressly provides, that “ if she fail to make any such will, or to execute any such writing, then the said trustees shall convey the said tract of land,” &c., “to all such children of said Mary Ann Brown born of her marriage with the said Samuel B. Brown, as may be then living, and to the descendents of such as may be dead, per stirpes, whether such children be now in esse or hereafter to be born of such marriage; or, in case no such issue shall be then in being, to the right heirs of the said Mary Ann Brown.” She died without having made any such will, or executed any such writing; and under the limitation of the said deed, the corpus of the trust supject devolved on her children then living born of her marriage with the said Samuel B. Brown, of which there were several, there being no descendants then living of any such children as were then dead. The only mode by which she could possibly have defeated the said limitation in favor of the said children, was to dispose of the corpus of the trust subject by will, duly executed, as if she were a feme sole, or by other writing attested by at least three witnesses, as prescribed by the said deed. . She had no right to spend the proceeds of sale, or any part thereof, of the corpus of the trust subject, or any *403 part thereof, if sold in her lifetime; but it was the duty of the trustees to invest and hold the proceeds of any such sale for the uses and purposes declared in said deed.
The court is further of opinion that the exchange in the proceedings mentioned, of the said two hundred acres of land for the American Hotel property was a valid sale of the said two hundred acres of land, and a valid investment of the proceeds of said sale in the said American Hotel property under the trusts and powers created by the said deed, whereby the said American Hotel property, to the extent of the said investment, to wit: the sum of $12,000, the agreed value in said exchange of the said two hundred acres of land, became subject to all the trusts and powers created by the said deed, just as if the said hotel property had been the subject conveyed by the said deed instead of the said two hundred acres of land.
The court is further of opinion that the said American Hotel property, to the extent to which the purchase money thereof was paid by the said Mary Ann Brown out of its profits after the said exchange was made, became also the separate estate of the .said Mary Ann Brown. So that the whole of the said hotel property thus became the separate estate of the said Mary Ann Brown, subject, however, to the payment of the balance of the purchase money yet remaining due and unpaid to those who sold the property to her or her trustees.
The court is further of opinión that after the said exchange was made, there was no other sale or investment under the trust and powers created by the said deed; but the said American Hotel property, subject to the lien thereon as aforesaid, having become the separate estate of the said Mary Ann Brown as afore *404 said, and not having been disposed of by her in her lifetime or at her death, belonged, at the latter event, which happened in the year 1868, to her children, who were entitled thereto, either under the limitation contained in the said deed, or as her next of kin, and in the same proportions, whether entitled in one or the other of these two ways.
To the extent that the said property represents or was purchased with the original trust subject, it was, of course, subject to the limitations and restrictions declared by the said deed. To the extent that the purchase money was paid out of the profits of the property after the said exchange was made, it seems also to be subject to the said limitations and restrictions. The profits of the separate estate, whether it be the original subject or that for which it was exchanged, were as they accrued, separate personal estate of Mrs. Brown, and might have been disposed of by her according to her pleasure, as if she had been a feme sole. She had power to spend them, or she had power to invest them in real or other estate, and on such trusts and limitations as she thought proper. She chose to invest them in real estate, to wit: in the American Hotel property. They then ceased to be personal estate, subject to her general right of disposition as of separate personal estate, and became real estate, subject only to such right of disposition as she had, either under the powers created by the original deed, or under the law in regard to the real estate of a feme covert. The case of West v. West’s ex’ors, 3 Rand. 373, shows that while the profits of her real estate before they were invested were personal estate, subject to her general jus disponendi, yet so soon as they were invested by her in real estate, they became thenceforward separate real estate, sub *405 ject only to such a jus disponendi as belongs to such an estate. Were they invested in the said estate generally, without any limitations or restrictions, or were ' they invested under any, and if any, what limitations or restrictions? She had the right to consult her pleasure in this respect, and it seems that she intended to invest the said profits in the said real estate, subject to the limitations and restrictions declared by the original deed. There was an exchange of the original trust property for the American Hotel property, and no doubt it was intended that the latter should he held on the same trusts on which the former had been held. Ho other trusts were declared. There was no reason for holding a part of the property under those trusts and the residue under other trusts, and if such a different holding had been intended, it is reasonable to believe "-that the intention would have been declared. It seems that mutual deeds were executed for the property exchanged, but they are not in the record. There is in the record, however, a copy of the decree made in the case of Breckenridge’s creditors v. Breckenridge’s adm’rs, &c., by which commissioners were appointed to convey to Thomas J. Michie and William H. Harman, trustees of Mary Ann Brown, the “American Hotel property”; thus showing that it was intended that the whole property should be conveyed to the said trustees, subject to the trusts of the deed by which they were created trustees.
But however that may be, the effect is precisely the same, whether that part of the property in which the profits were invested be subject to the limitations and restrictions of the original deed, or be separate real •estate free from such limitations and restrictions; and it must, as we have seen, be one or the other. Pre *406 cisely the same persons would be entitled to it as the heirs-at-law of Mary Ann Brown, who would be entitled to it under the limitations of the deed. It was converted from personalty into realty; and the surviving husband has no interest in the subject as teuant. by the curtesy, as is clearly shown by Judge Carr in the case of West v. West’s ex’ors, supra. That case is one of very great importance, has a strong bearing-upon this, and, indeed, seems to be conclusive of it. It was decided by four judges, who delivered seriatim opinions, and there was no disagreement among them. It is therefore unnecessary to determine the question,, whether the American Hotel property, so far as it represents, or was purchased out of the rents and profits thereof, received or realized by the said Mary Ann Brown as aforesaid, was subject to the limitations and restrictions declared by the said deed, or was her separate real estate, free from said limitations and restrictions.
The court is further of opinion that the appellants purchased the said American Hotel property not of the said Mary Ann Brown, nor of her said trustees, Miehie and Harman, or either of them, but of the appellees, A. S. Lara and Samuel B. Brown, Jr., who claimed to have derived it from Samuel B. Brown,. Sr.; and the whole amount of the purchase money contracted to be paid by them, to wit: $80,000 in Confederate currency, was paid by the said purchasers to the said Lara, -for himself and the said Samuel B. Brown, Jr., on his giving a bond of indemnity with surety; and no part of the said purchase money was paid to the said Mary Ann Brown, or ever enured to her benefit. The acts and conduct of the said Mary Ann Brown, and of her trustees, the said Miehie and Harman, after the said purchase was made, and the *407 purchase money was paid as aforesaid, which are relied on by the appellants as having the effect of confirming their title, and making it good under the trusts and powers of the said deed, can have no such effect. There was no sale and conveyance of the property to them by Mrs. Brown or her said trustees in the mode prescribed by the said deed, or in the mode prescribed by law for the conveyance of the real estate of a fem.e covert; and there was no contract between her and her said trustees, or any or either of them, and the appellants for the sale and conveyance of the said hotel property, which can be enforced by a court of equity. The deed of trust conveying the two hundred acres of land to Michie and Harman was duly recorded, and was known to the appellants when they became the purchasers of the American Hotel property, and it was known to them that the said property was subject to the trusts of the said deed. They, no doubt, confided in the ability of their vendors to make them a good title, and in the security afforded them by the indemnifying bond: and they chose to run the risk for the sake of the advantages which they hoped to derive from the purchase. Mrs. Brown, being a feme covert, had no power to convey the property nor to contract in regard to it, except in strict pursuance of the powers conferred by the said deed, or at least of the powers conferred by law in regard to the conveyance of real estate of a feme covert; and therefore all her acts, and all instruments signed by her in reference to a transfer of the said property, or any interest therein to the appellants, were utterly null and void. Hor had the trastees any power to sell the property, or to sanction the sale of it to the appellants, except in pursuance of the deed of trust; nor does it appear that they had any intention of doing so; and certainly *408 the husband, Samuel B. Brown, Sr., had no such power. The deed was intended to secure the property against his power and control, and even against the power and control of his wife, except under the restrictions and limitations declared by the deed. Her acts might be influenced, as they no doubt were, by him; and it was therefore intended to afford her protection even against her own acts, except as aforesaid. If she had no power to convey the property otherwise than as aforesaid to the appellants or their vendors, she had no power to make a contract for such a conveyance, which a coui’t of equity could enforce, much less could any voluntary promise she may have made, without any valuable consideration, to confirm the title of the appellants, be so enforced. But it does not appear that she ever made such a promise, at least until after they had made the purchase of Lara and Samuel B. Brown, Jr., paid the purchase money, and taken a bond of indemnity to secure the title. The children of a marriage, when provided for by a settlement, whether it be ante or post-nuptial, are always regarded as being embraced within the consideration of the settlement; and the rights thereby secured to them cannot be released by the wife by any instrument however formal. So far from any imperfect act of hers, founded on no valuable consideration,flowing to her or to them, being regarded as a defective execution of a power which a court of chancery will help, it would rather be regarded as an abuse or perversion of power on which that court will frown.
The court is further of opinion that it does not sufficiently appear that the said purchase money, or any part thereof, was invested in the purchase made by the said Samuel B. Brown, Sr., and Lara, of land and slaves in Georgia-, or was applied to the payment of *409 the purchase money thereof; and, at all events, that the appellants are entitled to no further relief than has been afforded them by the decree of the Circuit court, in giving them the benefit of the rents of the said American Hotel property after their purchase thereof, and until the death of the said Mary Ann Brown; and also the benefit of the shares and interest of the said Samuel B. Brown, Jr., and A. S. Lara in the said property.
The court is therefore of opinion that there is no error in the decree of the Circuit court, and that it ought to be affirmed.
Decree affirmed.