BURKS, J.,
delivered the opinion of the court.
It is conceded by the counsel on both sides that the estate of the appellee, Mrs. Chambers, in the property embraced in the antenuptial contract and deed of settlement of the 12th day of December, 1868, is a separate estate, and it was further very properly conceded in argument by one of the counsel for the appellants, that this estate of Mrs. Chambers is limited to the term of her natural life. What are her powers over it, is the question presenting most difficulty. Has she the power to dispose of it, or to encumber and charge it with the payment of her debts in such manner and to such extent as would lead to an alienation of it?
*It is the settled law of this state that a married woman is regarded in equity as the owner of her separate estate, and as a general rule, the jus disponendi (qualified as to the mode of disposal of the corpus of real estate), incident to such estate, unless and except so far as it is denied or restrained by the instrument creating it; but it is subject to such limitations and restrictions as are contained in the instrument, which may give it sub modo only, or withhold it altogether. McChesney & als. v. Brown’s heirs, 25 Gratt. 393; Nixon v. Rose, 12 Gratt. 425; Penn & others v. Whitehead & others, 17 Gratt. 503.
As incident to this jus disponendi, she may charge such estate with the payment of her debts. She may charge it as principal or surety for her own benefit, or that of another. She may appropriate it to the payment of her husband’s debts. -She may even give it to him if she pleases, no improper influence being exerted over her. She may extend the charge to the whole, or confine it to a part of the estate. If no specific part is appointed for the payment of the debt, the fair implication is, that the whole was intended to be made liable. If, on the other hand, only a part of the estate, expressly or by fair inference, is designed to be charged, no liability whatever can attach to the residue. The liability of the estate can arise only out of the supposed intention of the wife to charge it, and no pecuniary engagement can be a charge upon the estate, which is not connected by agreement, express or implied, with such estate. Burnett & wife v. Hawpe’s ex’or, 25 Gratt. 481; Darnall & wife v. Smith’s adm’r & als., 26 Gratt. 878.
We do not find in the deed of settlement in this case any express interdiction or limitation of the jus disponendi, and of the incidental power to encumber and charge .the separate estate to an extent involving alienation, but, if by a fair construction of the instrument, the exercise *of these powers would be inconsistent with the plan and scheme of the settlement, and would defeat the plain intent pervading the deed, they must be considered as much forbidden as if expressly denied. The exclusion of the power of alienation, as said by Judge Mon-cure in Nixon v. Rose, trustee, supra, “is often, if not generally, necessary to effectuate the objects of the settlement, and to protect the wife as well from her own weakness, as from the power and influence of her husband. The law, therefore, favors the intention to exclude it, and will give effect to such intention whenever it can be ascertained, by a fair construction of the instrument.”
In the construction of every instrument, the paramount rule is so to construe it, as, if possible, to give effect to every part of it, and in order to discover the intention of the parties, we look not only to the terms of the instrument, but to the subject matter and the surrounding circumstances.
The settlement in this case appears to have been wholly of the property of the husband, and it would seem it was all he had. To what extent, if at all, he was indebted, is not disclosed. The property consisted in part of a lot with improvements, on which he resided, in the town of Dan-ville. Its value does not appear, except that on the pledge of it as security, the appellants agreed to advance from time to time a sum of money not exceeding at any one time $25,000. It must, therefore, have been regarded as valuable. The other property conveyed consisted of a small tract of land (thirty-five acres), a wooden factory-house with an unexpired lease of the ground on which it stands, divers fixtures for the manufacture of tobacco, household furniture, several horses and .other articles of personal property. From the enumeration and description of the property, it is evident that the property of principal value in the settlement *was in the house and lot in Danville, the home and residence of the grantor.
Looking to the deed, we cannot fail to discover that the leading intent was not only to provide, but to secure a home, maintenance and support, not for the wife only, but also for the children of the marriage. This is quite apparent from the preliminary recitals in the deed: “Whereas the said A. B. Chambers is desirous of securing and providing a comfortable home and proper maintenance and support for his intended wife, and any child or children there may be of the mar *81 riage between them: Now, this indenture witnesseth,” &c.
This declared purpose to provide and secure a “home” for the wife and children is, by a subsequent provision of the deed, extended to the husband; for, after conferring upon the wife the power to have the property sold by the trustee and the proceeds invested in other property subject to the trusts impressed on the property conveyed, "it is expressly stipulated as follows: “But it is also agreed and understood between all the parties hereto, that the said A. B. Chambers shall be allowed to live in and upon said property, and the same shall be his home during the term of his natural life, though not subject to his control or management, nor liable for his contracts; and in case said property is sold, and the proceeds invested in other real property, then he shall be entitled to a home upon the same, as upon that herein conveyed.” Again, the only sale of the property expressly authorized by the deed is to be made by the trustee “upon the written request” of the wife, if at any time after the consummation of the marriage “she should deem it for the best interest of herself and family that the said real and personal estate herein conveyed should be sold, and the proceeds of such sale invested,” &c.
Thus it would seem, that the leading intent of the settlement was to provide for the “family” — to secure a *home for all, and the common support and maintenance of the wife and children. Accordingly, in harmony with this intent, the general features of the scheme were to sett1e the whole property to the separate use of the wife during her life, and to limit the equitable fee to the children of the marriage, with power in the wife to make appointment amongst them, observing the principle of equality, or on failure of issue of ri'.e marriage, as it would appear, to appoint the children of the husband by a former marriage to' take, observing the same principle of equality in the appointment; and cn failure of issue of the marriage and default of appointment to the children of the husband by the former marriage, at the death of the wife, she having survived the husband, to limit the fee to “those to whom by the laws of the state of Virginia it would go by virtue of their relationship to the said A. B. Chambers (the husband).” The only contingency in which no limitation is provided, is the death of the wife in the lifetime of the husband without issue of the marriage and without appointment by the wife among the children of the husband by the former marriage. Upon the happening of that contingency, the fee. by operation of law, would result to the husband, the grant- or. in the settlement.
Now, this whole scheme would seem to be designed to preserve the property, settle and secure its use and enjoyment to the family —to provide and secure a home for them and support and maintenance for the wife and children. The only change in the property which is expressly authorized, is a sale, on the written request of the wife, and reinvestment of the proceeds in other property, subject to the same trusts which are impressed on the property conveyed, if the wife should deem such sale and investment to be “for the best interest of herself and family.”
It is true, the trustee is directed to “hold, use and *manage” the property * * * “for the sole and separate use, benefit and disposal of the wife,” but the word “disposal” may appropriately be referred to the sale for reinvestment which has been mentioned, and the language descriptive of the control of the estate by the wife, while per se and disconnected from the other parts of the instrument it might not import with certainty any restraint against alienation, should, in its relation to other provisions, have a restricted meaning given to it. The language is, that “the said trustee will suffer and permit the said Fannie E. Major (the intended wife), after her marriage aforesaid shall have been consummated, to have, occupy, use and enjoy, in quiet and peaceable possession during the term of her natural life, all the property, both real and personal, herein conveyed, assigned and transferred, without interference on the part of any one, and of him, the said trustee, save and except as to such acts and things as he may be required either in law or equity to do and perform by virtue of his office of trustee aforesaid.”
Bearing in mind the leading intent of the settlement, to-wit: to provide and secure a home and support and maintenance for the family, the construction of the language just cited should be such as, if possible, to give effect to that intent, not to defeat it. The words “have, occupy, use and enjoy” may, and we think should be construed, as used with particular reference to the words which follow, relating to the possession of the property, the intent being that she should have “quiet and peaceable possession * * * without interference on the part of any one and of him, the said trustee * * * » These words too were the more proper as serving to qualify those preceding, by which it was declared that the trustee should “hold, use and manage” the property.
The language which immediately follows, to-wit: “the understanding and agreement between the parties hereto *being, in consideration of the premises and of the marriage aforesaid, to settle said property to the sole and separate use and benefit of the said Fannie E. Major (the intended wife), and after her, to any child or children which there may be of the marriage between herself and the said A. B. Chambers, and in such manner as shall be hereinafter named,” was more particularly intended to declare what had not been done before, the disposition of the estate after the death of the wife. It had already been declared that her interest should be for her life, that the martial rights of her husband should be excluded, and it only remained to limit the estate after her death. Some of the property embraced in the deed of settlement was personal property, which might perish from use or from natural causes. In *82 the contingent limitation of the property to the heirs or next of kin of the husband after the death of the wife, the words “what remains of the same” are used, wt think, in reference to the possible diminution of the estate from the causes before mentioned.
We think, taking the whole deed together, the fair construction is, that it was intended that the property should be kept together during the life of the wife, so as to furnish a home for the family and for the common support and maintenance of the wife and children, and that it was never intended that the wife should have the power (except for the purpose of reinvestment, as' specially provided), to alien the property, or to encumber or charge it in such manner and to such extent as to lead to alienation. The exercise of such power would be inconsistent with the scheme of the settlement, and effectually defeat the leading and prevailing intent indicated by the deed.
It follows that, in our judgment, the claim of the appellants, whether under the deed of trust relied on, or under the alleged agreement of Mrs. Chambers to *charge the estate with the payment of the money advanced, cannot be sustained. She had no right lo charge her own separate estate, in the manner claimed, with the payment of the money advanced, nor can the arrangement made be sanctioned as a legitimate exercise of the power given by the deed of settlement to make sale of the property and invest the proceeds.
The money advanced on the credit of the trust property was to be used in a hazardous business, and the purposes to which it was to be implied could, in no just sense, be called an investment under the terms of the deed of settlement. The appellants, when they advanced the money, knew how it was to be employed. The deed of trust under which they claim shows on its face that they had this knowledge. With this knowledge, and a full knowledge of the deed of settlement and all its provisions, they advanced the money at a ruinous rate of interest (eighteen per centum per annum), and took a deed on the trust property to secure its payment. The deed is not' a valid security, nor are the notes which were given for the loan, nor any other engagement or undertaking of Mrs. Chambers, a valid charge upon the trust property or upon any estate or interest which she has in it.
Judicial decisions, based mainly on construction, can seldom be relied on as precedents for construction in other cases, for the obvious reason, that the instruments construed differ, more or less, in their terms, subject-matter and attending circumstances. They are sometimes alike, but nullum simile est idem. The case of Penn & others v. Whitehead & others, 17 Gratt. 503, in some of its features, resembles the case in judgment, but is very unlike it in other essential particulars. In that case, the settlement was post-nuptial, and the consideration flowed wholly from the wife. The property settled consisted of some slaves and other personal estate, of the *value, all together, of little more than one thousand dollars. The husband was insolvent, and there was a numerous family of children. The estate was limited to the separate use of the wife for her life, to remain in her possession for the support and maintenance of herself, her issue and family, and for no other purpose, and after her death, to her children. The profits of the estate were wholly inadequate to the support of the family, and it was held that the wife was not restrained by the settlement from engaging in a small mercantile business, to be conducted by her husband and his sons, on the credit of the separate estate. In the case before us, the consideration flowed from the husband. The settlement was before and in contemplation of marriage. The property of chief value was a house and lot, the residence and home of the husband. The primary object of the settlement was to provide and secure this home to the wife and any children there might be of the marriage. While, under the circumstances, it may reasonably have been supposed to have been in contemplation of the parties in making the settlement in the first case, that a small mercantile business might be undertaken on the credit of the estate, it would seem wholly inconsistent with the intent and objects of the settlement in the present case to permit the wife to engage in the hazardous business of buying, selling and manufacturing tobacco on the credit of the property dedicated and set apart to her as a home for herself and her family; and, if the adventure should prove disastrous, as in this case, she would be deprived of the very home intended to be secured to her and her family.
In the petition, briefs and oral arguments of counsel, several interesting questions have been presented for our consideration, such as whether the bill should not have been in the corporate name of the “Bank of Greensboro’,” and whether the bill, in its present form, may be treated *as such a bill; whether the trustee in the deed of trust to the appellants was competent, as notary public, to take and certify the acknowledgment and privy examination of Mrs. Chambers as a party to said deed; whether the contract for the loan made and security taken by the appellants was a Virginia contract or a North Carolina contract; and if the latter, whether the contract and security (being for a higher rate of interest than is allowed by the laws of North Carolina), can be enforced on a bill by the appellants in a court- of equity in Virginia.
The view we have taken of this case makes it unnecessary to decide these and other incidental questions raised.
We are all of opinion, for the reasons stated, that there is no error in the decree of the circuit court dismissing the bill of the appellants, and that said decree should therefore be affirmed.
Decree Affirmed.