BURKS, J.,
delivered the opinion of the court.
There can be no doubt, both upon principle *394 and authority, that the execution by Mrs. Minor, in conjunction with her husband, either as principal or surety, of the bond for two thousand dollars, the payment of which with the interest thereon, the appellant is seeking to enforce, operates a general charge upon her separate estate, and that the several deeds of trust on the “Greenway” farm, to the extent of her interest therein, which is the principal portion of said estate, are specific liens on said interest, unless her power to alien or encumber her separate estate was restrained or denied by the instruments creating it. McChesney & als. v. Brown’s heirs, 25 Gratt. 393; Burnett & wife v. Hawpe’s ex’or, Id. 481; Darnall & wife v. Smith’s adm’r & als., 26 Gratt. 878; Bank of Greensboro’ v. Chambers & als., 30 Gratt. 202; Justis v. English & als., Id. 565, and cases there cited. See also- Garland v. Pamplin & als., 32 Gratt. 305.
She derived her interest in one-third part of the farm under the will of her father, Charles J. Catlett, who died in 1845, and in two-thirds under the deed of her husband, executed June 12, 1865. The conveyance' by this deed is to T. Parkin Scott, in trust, as declared, “for the sole and separate use, benefit and behoof of the said Louisa Fair-fax Minor, wife of the said John West Minor, during her natural life, and for the use of the heirs of the said Louisa Fairfax Minor after her death, in the manner and form as set forth and provided in the will-of the said Charles J. Catlett as aforesaid.”
We are thus referred by the deed to the will, and the extent of the wife’s power over the estate created *by the former is to be ascertained and measured by her power over the estate given by the latter.
By his will, the testator, after giving to his wife an annuity of one thousand dollars during her life and charging his whole estate with its payment, gives to his son Erskine Catlett and to his daughter-in-law Esther Ann Catlett and to their heirs respectively, each one-third part of his whole estate subject to the annuity bequeathed to his wife. The remaining third part he gives to his daughter Mrs. Minor by the following clause: “I give and devise one other third part or portion of my whole estate, real, personal or mixed, of every kiñd and description whatever which I may die possessed of or owning, to my daughter-in-law, Esther Ann Catlett, and her heirs, in trust for the use, benefit and be-hoof of my daughter Louisa Fairfax Minor, wife of John West Minor, during, her natural life, and for the use of the heirs of my said daughter after the death of my said daughter, subject to the annuity aforesaid; and my will is and I hereby empower and require the said Esther Ann Catlett, trustee as aforesaid, as soon as convenient and practicable after having received the said legacy, or proceeds of said devise, to loan out the same at interest on good and sufficient security by bond and mortgage on unincumbered real estate and to apply the interest or income which shall or may arise, accrue or be derived therefrom to the payment and discharge of all the expenses and charges necessary and required for the proper maintenance, support and comfort of my said daughter Louisa, or the said trustee may, if she shall in her discretion deem it proper, pay over the interest or income aforesaid to my said daughter, Louisa, semi-annually in money on her sole and separate receipt independent of any interference, hindrance or control of her husband or by him; and the said interest or income shall not be *liable or taken for her husband’s debts or contracts, nor be applied to the payment thereof, or any part thereof.”
By a subsequent clause, the executors are empowered and directed to sell his property, and from the proceeds of sale, first pay his debts and funeral charges; next, set apart a sum. the annual interest or income from which, will be sufficient to pay the annuity to his wife, and then, in the language of the will, “pay the three other legatees named in this my last will and testament as hereinbe-fore mentioned and directed. He further directs, that the principal sum set apart to provide the annuity to his wife, shall, on her demise, be equally divided among the legatees aforesaid. By a codicil, he gives all his personal property, to his son Erskine. and declares it to be his will and desire that the sale of his real estate shall not take place until after the death of his wife.
We are of opinion, that by the provisions of this will, the whole estate of the testator was equitably converted into money.
It is well settled, that land directed or agreed to be sold and turned into money (upon the principle that what is agreed or ought to be done is considered as done) shall be treated as assuming the quality of personalty, and as continuing impressed with that character, until some person entitled to the proceeds shall elect to take the subject in its original character of land. Per Baldwin, J. in Siter Price & Co. v. McClanichan and others, 2 Gratt. 280. 294.. See also Fletcher v. Ashburner, and notes, English and American, 1 Lead. Cas. Eq. Part 2. (4 th Ed.), 1118 et seq.; Craig v. Leslie, 3 Wheaton R. 563; Harcum’s adm’r v. Hudnall, 14 Gratt. 369 and cases there cited.
In the last named case, it is said, (p. 377), that no discrimination appears to be made in this doctrine of *“equitable conversion” between the case of a conversion which is not required to be made at any particular period, and which therefore, in case of a will, should be made presently after the death of the testator, and one in '•hich the conversion is to be made at some future period prescribed. In the latter case, “we must consider the property as converted from the time when it ought to hftve been converted.” Per Cranworth, Lord Chancellor, Ferrie v. Atherton, 28 Eng. Law and Eq. R. 1.
To have the effect in equity of a conversion, the direction to sell must not be merely optional. It must be imperative. Tazewell and others v. Smith’s adm’r, 1 Rand. 313. 320. The intention, however, to convert may be implied without express words di *395 recting a sale. It is sufficient if such intention be clear. 1 Lead. Cas. Eq. (4thEd.), 1138.
Looking to the clause which authorizes the sale, the language in the first part is mandatory. * * * “I do hereby authorize, empower, and direct my executors * * * to sell and dispose of,” &c. In Green v. Johnson, 4 Bush (K’y) R. 164, the language of the will was, “I authorize and request my executors * * * to sell and convey all my lands, except,” &c. The word “request” was considered as synonymous with “require — direct—order.” the latter words being regarded as mandatory.
By the will of Charles J. Catlett, the only discretion given to the executors is as to the time or limes and manner oí sale of the different portions of the property. In a case in New York, where a like discretion was given, the direction to sell was nevertheless considered imperative. Stagg v. Jackson, I Comstock R. 206.
If the clause directing the sale be read, as it should be, in connection with the other parts of the will, and '-especially with the clause already quoted, -which makes provision for Mrs. Minor, the intention to convert the estate into money is clearly manifested: for. the provision and the only provisionmade for her presupposes a sale, one-third part of the proceeds of which is required tobe put out on loan for her benefit.
In Phelps’ ex’or v. Pond, 23 New York R. 69, where a testator authorized his executors to sell real estate, and it was apparent from the general provisions of the will, that he intended such estate to be sold, the doctrine of equitable conversion was applied, although the power of sale was not in terms imperative. See also Power v. Cassidy. 9 Reporter 351; Burr v. Sims & ais., 1 Wharton (Penn.) R. 252, 262.
The entire real estate of the testator being equitably converted into money, the important inquiry is, what limitation or restraint, if any, was placed upon the power of Mrs. Minor to alien or encumber the portion given in trust for her? And here it pay be remarked that the same rule applies, which has been already adverted- to as applicable in determining the question of equitable conversion. The restriction need not be expressed in negative words. No particular phraseology is required, but the intention must be clear. It is sufficient if the intention can be gathered from the whole instrument. 2 Perry on Trusts, § 6T0 and cases cited; Freeman, adm’r v. Elood, 16 Ga. 528.
Tn Bank of Greensboro’ v. Chambers. & als., 30 Gratt. 202, restraint upon alienation was deduced by construction from the instrument as a whole. In the opinion in that case, it was said, “We do not find in the deed of settlement in this case any express inter: diction or limitation of the jus disponendi and of the incidental power to encumber and charge the separate estate to an extent involving alienation, but, if by a fair construction of the instrument, Ihe exercise of "‘these powers would be inconsistent with the plan and scheme of the settlement, and would defeat the plain intent pervading the deed, they must be considered as much forbidden as if expressly denied.”
The will, which fixes the limitation, if any there be. to the wife’s power over her separate estate in the present case, does not in terms forbid her to alien, charge or encumber the estate,, nor does it contain any formal clause against anticipation, such as is sometimes found in settlements, especially in England, but the intcintion to restrain seems to be plainly implied. The main object of the testator in the provision made for his daughter manifestly was to secure to her a comfortable support and maintenance as long as she lived. To accomplish this object, two things at least were necessary to be done — to exclude the rights of the husband and limit the powers, of the wife. The first was effected by giving to the wife a separate use and the second by creating a permanent fund to be under the exclusive control and management of a trustee, who was not only empowered but required to “apply” the interest or income “arising from the fund to the payment and discharge of all the expenses and charges necessary and required for the proper maintenance, support and comfort” of the wife. Unlimited power in the wife to dispose of the fund or to anticipate the income would be a power to frustrate lhe main design of the testator in creating the trust, namely, the providing and securing to his daughter with reasonable certainty support and maintenance during her life, and it must therefore be taken that he intended to deny to her any such power.
The alternative provision, which authorizes the trustee, instead of personally applying the interest or income to her support, to pay it over to her “semi-annually in money on her sole and separate receipt, is *permissive only. The trustee could not be compelled so to pay it over “in money,” but is merely authorized to do so, “if she (the trustee) shall in her discretion deem it proper.” The imperative duty first imposed on the trustee to “apply” the income or interest, and the alternative discretionary power subsequently conferred to pay “semi-annually in money,” would seem to be inconsistent with the power of the cestui que trust to alienate the income by anticipation, at least so much of it as might be required for continuous support.
There are adjudged cases in the English chancery to the effect, that to direct the “profits to be paid from time to time into the proper hands of the wife;” or that the “profits shall be paid to such persons and in such manner as the wife shall from time to time, during her life, notwithstanding her cover-ture, by any note or writing appoint, and in default of appointment, into her proper hands for her separate use;” or that the profits shall be paid “as the same became due and payable, into the hands of the wife, and not otherwise, and that the receipts of the wife alone for what shall be actually paid into her own proper hands should be a sufficient discharge,” does not sufficiently evince an intention to restrain anticipation *396 of income. These cases are referred to in 1 Minor’s Institutes 327 and have been examined. Some of them were cited in argument by the learned counsel for the appellant. Without meaning to question the correctness of the decisions,' it is sufficient to say, that the language employed is not the same as that used in the will which we have to construe in this case. Owing to the diversity in phraseology and attending circumstances, decided cases can seldom have a controlling influence in the construction of instruments. We may however, for illustration, refer to Perkins, &c., v. Hays and others, 3 Gray’s R. 405. which is somewhat analogous to the case in judgment. *A testator bequeathed an annuity to his widow, to be paid to her, clear of all changes and deductions whatever, during her life; or, in case of her incapacity, at any time, by sickness or otherwise, to receive it, to any person lawfully appointed to represent her; or, in default of such appointment, to be applied by his executors to her support, and the support and education of his minor children. It was held, that the widow had no power to alienate any part of the annuity by anticipation — that the power of alienation by anticipation was inconsistant with and would tend directly to defeat the main object and purpose of the will, to-wit, the support and maintenance of the wife, and the support and education of the children during their minority. “If the alienation were made,” says the judge delivering the opinion of the court, “and the event anticipated and provided for ift the will was to occur, the duty of the executors or surviving executors to apply the annuity to her support would still remain, and must b’e discharged, or the main object and purpose of the trust be defeated.
Our conclusion is, that Mrs. Minor had no power to dispose of, or charge, or encumber the corpus of the estate derived by her under the will of her father or acquired by the several deeds set out in record, except such, if any, as was acquired under the deed of her son Fairfax C. Minor, dated the 11th day of May, 1865. If she took anything under the last named deed, though to her separate use, she was expressly empowered by the deed to dispose of it as if she were “an unmarried woman.” Nor did she have the power to anticipate the profits, income or interest which might arise or be derived from said estate (except as to the interest, if any, acquired as aforesaid under the deed of her son Fairfax), so far as they might be required *for her comfortable support; but, we think, the restrictions upon her powers does not extend to so much of said profits, income or interest as shall exceed what may be necessary for such support. The effect therefore of the several deeds of trust was to create liens for the debts mentioned therein' on such excess, if any, of the profits or income arising from the Greenway farm during the life of Mrs. Minor, and also orí the estate, if any, acquired by her under the deed of her son Fairfax; and this is the full extent of the encumbrances created by said deeds.
It was earnestly argued by the learned counsel for the appellant, that even if the real estate devised by the will was equitably converted into money (a proposition they do not admit, but which to us seems clear), yet it was reconverted into real estate by the election of the parties, shown by the suit for partition in 1846, the actual division of the land under a decree in that suit, and subsequent acts and conduct of the parties. In the view we take of this case, it is not at all necessary to decide, whether any valid election was made or not. For if it be conceded, that it was made, and that the Green-way farm is to be treated as land, the concession does not help the appellant. Whether the estate be realty or personalty, it remained the separate estate of Mrs. Minor, and bound by all the fetters put upon it by the will; the portion acquired under the deed of her husband being placed by the deed on the same footing with the portion derived under the will. Election might change the form in which she would take and hold the estate, but it could not enlarge her powers over it. The restraint imposed was a modification of the separate estate, which she could not change or effect by election or otherwise.
*The Greenway farm having been equitably converted into money, whether it should be treated as personalty, or as reconverted into realty, and whether the estate of Mrs. Minor therein be absolute or for life only, or as to a portion absolute and as to the residue for life, are immaterial questions in this case; as her powers over her separate estate (the only matter we have to deal with), during coverture at least, were limited and restrained in the manner and to the extent already indicated.
The subsequent discoverture of Mrs. Minor cannot per se give any other or greater force and effect to her prior engagements than they had during her coverture. Such engagements did not bind her personally either at law or in equity, so as to warrant a personal judgment or decree against her. They affected her separate estate to the extent and only to the extent of her then existing powers over it. They had no other operation. Her subsequent discoverture could not, upon any principle known to us, operate by estoppel or otherwise to enlarge the liabilities of that estate imposed by the engagements when entered into.
The only error in the decree appealed from is the dismissal of the appellant’s bill, so far as it seeks to subject the income of the estate to the payment of the debts mentioned in the deeds of trust. Such dismissal, in respect of said income, should have been confined to so much of the bill as seeks to subject the income required for Mrs. Minor’s support and maintenance.
For this error, the decree must be reversed in part, and the cause remanded for further proceedings.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript *of the record of the decree aforesaid and the *397 arguments of counsel, is of opinion, for reasons, stated in writing and filed with the record. that so mueh of the income which has accrued and so much as shall hereafter accrue, from the separate estate of the appellee Louisa Fairfax Minor as shall exceed what may be necessary for her comfortable support and maintenance continuously during her life is liable for the payment of the debts mentioned in the several deeds of trust referred to in said decree, and that so much of said decree and so much only as dismisses the complainant’s bill as far as it seeks to subject such excess to the payment of said debts is erroneous: therefore, it is decreed and ordered, that so much of said decree as is hereinbefore declared to be erroneous be reversed and annulled and the residue thereof be affirmed, and that the appellant recover his costs by him expended in the prosecution of his appeal aforesaid here, to be paid out of such excess, if any there be, of said income now under- the control of the said circuit court or which may hereafter arise, and the said cirucit court is directed by proper order to provide for the payment of said costs out of said excess: and this cause is remanded to the said circuit court with directions to apply the said income accrued and which shall hereafter accrue first to the comfortable support and maintenance of the said Louisa Fairfax Minor continuously during her life, varying the allowance to her for that purpose from time to time, if need be, so as to secure to her at all times such comfortable support and maintenance, if the income be sufficient, and if necessary for that purpose the whole of said income shall be soap-plied. And if the income be more than sufficient for that purpose, the surplus shall be applied to the payment of the debts aforesaid: and the said circuit court is ♦directed to take further proceedings in this cause in conformity with the foregoing opinion and directions in order to a final decree : all of which is ordered to be certified to the said circuit court of Loudoun county.
Decree reversed in part.