ANDERSON, J.
It is claimed by the ap-pellee that a separate estate was limited to her by her father’s will, when she was a feme sole, and after her marriage she held it free from her husband’s control. Whether it was competent for the father to make such a settlement, we will first consider; and it seems to be well settled affirmatively. Ri&hop says:
“In legal principle and on the prevailing authorities, both English and American, it is competent to limit an estate to the separate use of a woman yet unmarried, where no particular marriage is contemplated; and on her afterwards becoming convert, she will hold it as her separate estate, free from the control of her husband. But in most of the cases in which this has been allowed— not, it would appear, in all — there has been a trustee, who was a third person, in whom the legal title was made to vest.” He cites Robert and wife v. West, 15 Ga. R. 133, 138; Fears v. Brooks, 13 Ga. R. 195; Waters v. Tazewell, 9 Md. R. 391; Lamb v. Wragg, 8 Port. R. 73.
In Fears v. Brooks, supra, at page 197, it-is said in a note that Nesbit, J., stated the English doctrine and authorities thus: “A separate estate may be made in *a feme sole as was as in a married woman, which upon marriage will be good against the marital right; and this, although no particular marriage be contemplated.” And many English cases are cited in accord. The contrary was held by Lord Cottenham in Massey v. Parker, 3 Myl. & K. R. 174. In that case it was ruled that when property is given or settled to the separate use of an unmarried woman, it vested in her husband on the marriage. In the subsequent cases of Tullett v. Armstrong and Scarborough v. Borman, that decision was overruled; and on affirming these decisions on appeal, Lord Cottenham overruled himself. So the doctrine may be considered as settled.
It being competent to limit a separate estate to a feme sole, which, on her subsequent marriage, she will hold free from the control of her husband, we will next inquire, was the estate given to Lucy Isabella Mau-pin by the will of her father, Addison Mau-pin, limited to her separate use?
No particular form of words is necessary to create a separate estate. Any words showing an intention to do so will suffice. 1 Bishop on the Laws of Married Women. The same doctrine is enunciated in Westw. West ex’or, 3 Rand. 373, cited in petition of appellant. Judge Cabell said: “No particular phraseology is necessary to the creation of a separate estate in a feme covert, even where it is created by deed. Much less is it necessary when the estate is created by will. In this respect, as in all others growing out of wills, the intention of the testator is to govern.”
In this case the gift or - settlement was made by a will, which is very inartifically drawn, and shows upon its face that the draughtsman was not a lawyer, or one skilled in drafting such instruments, and therefore it cannot be expected that the intention of _ the testator will be expressed with _ philological accuracy or legal *precision. _ It was evidently his intention _ that his wife should have his whole estate during her life, though that intention is not declared anywhere in the instrument, that I can find, in express terms. But he gives no-part of his estate to either of his children until after the death of his wife. After that event he directs that his estate shall be divided among his children as soon as it can be conveniently done, and gives to each one of them one-fifth part thereof, subject to a deduction of whatever may be found charged to him or her on a certain account-book . He evidently meant.that each of his children should be charged with their respective advancements as charged to them in that book. He then qualifies the foregoing gifts by adding: “I give to my son, Chapman W. Maupin, in addition to his one-fifth part of my estate, my family clock.” Then follows a qualification and restriction of the gift to his daughters, all in the same fourth clause of his will, in the following language: “I wish [which in a will is a command] whatever is coming to my daughters, Mary E. Hicks and Lucy Isabella Maupin, put into the hands of a trustee of their own choosing, requiring them to give ample security for the faithful performance of the trust committed to them.”
The testator evidently felt that he was confiding important interests of his daughters to a third person, and that he would be invested with great powers and a large discretion affecting their interests. He could not select and designate the person himself, because before the time came for him to act, which could not be until after the death of his wife, who might survive him a great many years, the person he selected might not be living. He also doubtless desired that the trustee selected should be a-friend of his daughter and acceptable to her, and therefore preferred that he should be chosen by her at the time he was needed; *but, lest her choice might not fall upon one who would firmly and faithfully execute the important trust, he required that he should give ample security for its faithful performance.
By the fifth clause he directs the sale of all of his estate by his executor, which was partly real and in part personal, with a view to a division, which was to be made within twelve'or eighteen months after the death of his wife.
Again, in the sixth clause, he reiterates the injunction upon his executor as to the disposition of th.e portions coming to his daughters, as follows: “I wish the portions coming to my daughters. Mary E. Hicks and Lucy Isabella Maupin, placed in the hands of their respective trustees, and used for them as hereinbefore directed.” He had-before directed that the trustee into whose hands it should be placed should be required to give ample 'security for the faithful performance of the trust committed to him. That is not repeated here, but the require- *459 mcnt is, by the words “as hereinbefore directed.” But in this sixth clause he is more explicit as to the powers and duties of the trustee; he is to hold the trust property in his possession, which implies that the legal title, which goes with the possession of personal properly, is to be in him, but he is “to use it for them.” The words are few, but they are replete with meaning. How to use it? It is money, to be placed in his hands by the executor. How can he use it for them but to lend it out, or otherwise invest it? If he invested it in stocks, or in real estate, or other property for them, it would be using it for them, and it would be within the scope of his power and authority, provided the investment was made in the exercise of a sound discretion with a view to their benefit and the advancement of their interest; for this is required by the terms, which require him to use it for them. It is *not to be used for himself nor for their husbands, but “for them.” Which words imply that any investment or disposition he makes of it is to be for their benefit and the furtherance of their interest; and whether it will be or not, it is for him to determine; which invests him with a large discretion. The duty of determining, or the right to determine, is given to no other person by the will, not even to his daughter, much less to her husband, and no one is authorized by the will to control him in the exercise of his discretion, not even the beneficial owner of. the property. If he was exercising his discretion indiscreetly, or abusing his trust, a court of equity would doubtless interpose, at her instance, to prevent it, and for cause shown might remove him from his office of trustee. But as long as he makes judicious investments, and acts discreetly in the exercise of his discretion, and uses the trust property for the benefit of his cestui que trust, and faithfully performs his trust, it would not be in the power of even a court of equity to interfere to restrain him or to divest him of the powers with which he is invested by the will. Does he not, therefore, hold the property and the power to use it for the cestui que trust, separate from the husband and free from his control? Such is clearly the logical conclusion.
The seventh clause of the will tends, I think, to confirm this construction of the previous clauses. It gives to his surviving children, if one of them should die without an heir of his or her body, “whatever may then be left” of what he or she received from his estate, to be equally divided among them, “with such restrictions in regard to my daughters that may be entitled to a portion, as hereinbefore provided.” This is the third time that the testator in his will enjoins these restrictions upon the gift to his daughters, showing how important he regarded them. And that he ^intended them to be restrictions, he here calls them such. By this section he qualifies the gift to each of his children by making it contingent upon his leaving an heir of his body. In that case, what is left of what he has received from his estate shall go to his surviving brothers and sisters. But it applies to only what is left, which may imply that he did not intend to restrict his daughters to the use only of the income on what he gave them, but not necessarily. It would equally apply, if no part of the principal was consumed by the daughter before her death without heir of her body, but a part of it had been lost without fault of her trustee or legal responsibility.
But if it implies that the daughter might use a part of the principal, with the assent of the trustee in his discretion, it implies that it was not intended that she should use the whole of it, and what might remain is not left to her disposal, but the will disposes of it, and it is a limitation upon her right of property, and to that extent it is a contingent right. It is not in conflict with the construction given to the previous clauses, but supports it, and should be read in connection with them.
It is a familiar rule in the construction of wills, that “all the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but. when several parts are absolutely irreconcilable, the latter must prevail.” (Mr. Jarman’s seventh rule of construction, approved by Redfield on Wills, 1 vol. 436. 427.) And this court held, in a recent case (Bank of Greensboro’ v. Chalmers, 30 Gratt. 202) that “in the construction of every instrument, the paramount rule is, so to construe it as, if possible, to give effect to every part of it; and in order to discover the intention of the parties we look not only to the terms of the instrument, but to the subject matter *and the surrounding circumstances.” And that was said with regard to a deed, which created a separate estate in the wife. It may be applied with more reason to the construction of a will, by which it is claimed that a separate estate is created in the wife; especially when such construction is necessary to give effect to the plain intention of the testator, and to prevent injustice and inhumanity. If such was not the intention of the testator, why would he have imposed these restrictions upon the gift to his daughters, and not upon his sons, except as to the limitation contingent upon their dying without an heir of their body, which latter limitation was ihtended to secure to his surviving sons, as well as his daughters, the enjoyment of the property, upon the happening of such contingency; but with the same restrictions as to his daughters as were before impressed upon the portions given to them, which could only have been to protect their weakness against their husbands’ power, and to preserve the property from his marital rights. In West v. West’s ex’or, 3 Rand, supra. Judge Green said: “I think the necessary construction of John Hooke’s will is, that lie gave to his executors one-fifth of his estate, for the separate use of his daughter, Mrs. West, a married woman.” &c. They were to hold it for her benefit, at their discretion — a discretion (he says) which could not have been *460 vested in them for any purpose but to prevent her improvident use of it. and to preserve the property from the marital rights of the husband. And for what other purpose could Addison Maupin have required the property he gave to his daughters to be vested in their trustees, and have clothed them with such large powers and discretion as we have seen? It is a question of intention from the construction of the will, did the testator intend to invest his daughter with a separate estate, free from the control of her husband, *if she should marry? The language of John Hooke’s will did not more strongly convey such intention, than is conveyed by this will. Cases may be found, and have been cited in the argument of this case, where a different conclusion has been reached upon facts, some of which resembled the facts of this case; but as was said by Judge Burks, with the concurrence of the whole court, in Bank of Greensboro’ v. Chambers & als., supra 215: “Judicial decisions, based mainly on construction, can seldom be relied on as precedents for construction in other cases, for the obvious reason, that the instruments construed differ. more or less, in their terms, subject matter, and attending circumstances.” To point out those differences in the numerous cases, would protract this opinion to too great a length. I have been unable to find any case, which was held not to constitute a separate estate, in which the same language relied on in this case to create a separate estate, was used. Each case must depend upon its own facts and circumstances, whether it shows an intention to create an estate in the wife free from the control of the husband or not. That is the important enquiry here. Did the testator intend that his daughters should have the benefit of the property he gave them by his will, free from the control of their husbands? And did he so provide, by requiring that a responsible person, or persons, should be chosen by his daughters, who should be put in possession of their property, and manage, control, and dispose of it in trust for them, as hereinbefore described? The powers and duties of the trustee, being incompatible with the possession and disposal of it, by the husband, or even by the wife herself, we can come to no other conclusion than that such was his intention, and we think that the provisions of his will are effectual to that end.
*“But it is contended, that if this be so, a married woman, as to her separate estate, has the power of alienation; and that it was competent for Mrs. Jones to unite with her husband in making the conveyance under which the appellant claims.
There are various and a contrariety of decisions on this subject. In Virginia the current of decisions have been to the effect, that a married woman, as to her separate estate, mav act as a feme sole, and has the power of disposing of the same; unless she has been restricted by the instrument of settlement. In Burnett and wife v. Hawpe’s ex’or, 25 Graft. 481, Judge Staples, whilst recognizing this as the established rule in Virginia, says: “If the question was res integra, it would be a matter of grave consideration, whether it would not better accord with justice, humanity, and the intention of the parties, to hold with Chancellor Kent, that the right of a married woman to dispose of, or encumber her separate estate, is not absolute, but only sub modo to the extent of the power given her by the instrument creating the estate. The doctrine of the courts as now expounded, while protecting the wife against the debts of the husband, leaves hef helpless and exposed, not only to her generous impulses in his favor, but to his secret influences, as difficult to be resisted as they are to be detected.” Whilst it seems to me the foregoing should commend itself to every generous mind, I am obliged to agree with him, that the opposite rule seems to be too firmly established in Virginia, now, to be called in question, and that the wife may exercise the jus disponendi as to her separate estate, as a feme sole, unless restricted by the instrument which invests her with the estate.
Those restrictions need not be in express terms. But if the exercise of the power to incumber or alien the separate estate, be inconsistent with the scheme of ^settlement, or would defeat the plain intent pervading the will, it is as much forbidden as if expressly denied. Bank of Greensboro’ v. Chambers and als., 30 Graft. 202. And as was held by this court in Nixon v. Rose, 12 Graft. 425. Judge Moncure delivering the opinion, the exclusion of such power being often, if not generally, necessary for the protection of the wife, as well from her own weakness as from the power and influence of her husband, the law favors its exclusion, and will give effect to such intention, whenever it can be ascertained by a fair construction of the instrument..
It is true that the mere appointment of a trustee will not be sufficient to show such intention. But Addison Maupin, by his will, required the property he gave his daughters, which would be in money, to be placed in the hands of a responsible trustee, who would be a friend of his daughter, whom he invested, in effect, with such powers and discretion as to the management and disposal of it for her. as I have shown, would be incompatible with either his daughter, or her husband, having the possession or disposal of it. And that was the scheme of his settlement on her; and it was his intention, pervading the whole instrument, so far as it effects his daughters. And this conclusion excludes the right of the daughter to encumber or alien her property. Whether she could do it with the consent of the trustee is another question, upon which we deem it unnecessary to express an opinion. Certainly she could not, within the concurrence of her trustee. She would be entitled to receive the income regularly from her trustee. And he might permit her, if necessary for' her support. to draw upon the principal.
Upon the foregoing views, it is obvious that the deed in which Mrs. Jones united with her husband — conveying all her in *461 terest in her father’s estate to the !|;appellant, in trust, to pay the debts of her husband, which were in the main, she says, contracted before their marriage — passed nothing of her interest in the estate, and is null and void.
There is another view of this case which may be briefly presented. When this deed was made, no part of the property was in the possession of the husband, or wife. Upon the division, Mrs. Jones was entitled to the one-fifth part of it, which, by the terms of the will, was not to be made until the death of her mother, who was still living, and in possession of the estate, as she had been since the death of her husband. Any right which Mrs. Jones had to any part of the estate, when the division took place, was contingent. If she should die before that event, without an heir of her body, she took nothing; but the portion bequeathed to her would go, by the express terms of the will, to her surviving sister and brothers. She may have had issue at the date of the deed, but that does not appear. At the date of her petition, it does appear that she had two children. But she may survive her children, and afterwards die without an heir of her body, and before the event occurs, upon the happening of which the division of the estate was to be made, under the will. In that case no interest could ever vest in her, in possession. If she is living when the division, by the requirement of the will, is made, she could not take possession of her share of the estate. The executor could not pay it to her, but could only pay it to her trustee, to be used or administered for her by him. And a payment to her by the executor, and her receipt, would be no discharge to him. Consequently, a payment by the executor to the trustee of her husband’s creditors, and his receipt therefor, a fortiori, could be no discharge to him.
*We are of opinion, that the executor of Addison Maupin has no power, under the will of his testator, to pay over her legacy to any one except a trustee, chosen and qualified as the will directs, who is constituted an active trustee in the management and disposition of the trust properly. And that if Mrs. Jones had, to any extent, the jus disponendi of her trust estate, it was only with the concurrence of her trustee, and consequently that no valid alienation of it could be made, before the trustee was chosen and qualified, according to the requirements of the will. Such, we think, was the intention of the testator, upon a fair construction of his will, which ought to be liberally construed, in order to give effect to that intention, which the law approves, and which is in harmony with the claims of justice and humanity. It appears that Mr. Jones, the husband, is insolvent; and to enforce the deed in question, would take every particle of his wife’s property, which her father was evidently very desirous, and much concerned, to secure to her, to pay debts which she was neither legally nor morally bound to pay, and leave her destitute of means for the support of herself and children; and so to rule, we think, would be to disappoint and defeat the will of the testator.
We are of opinion, therefore, to affirm the decree of the circuit court rejecting and dismissing the petition of L. D. Haymond, trustee, with costs.
STAPLES, J., concurred in the results of Judge Anderson’s opinion.