IN THE

# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

## Richmond.

Dey, Receiver v. Martin.

March 15th, 1883.

1. PRINCIPAL AND SURETY—*Discharge of surety.*—It is well settled that any change in the contract made without surety's consent, however immaterial, and even if for his advantage, discharges him. ·

2. EQUITABLE JURISDICTION AND RELIEF—*Judgment at law.*—To entitle party to relief in equity against judgment at law, he must not merely show that injustice has been done, but that he has been guilty of no *laches* about his defence at law. "It is more important that there should be an end of litigation than that justice be done in every case." *Wallace* v. *Richmond, Assignee*, 26 Gratt. 67.

3. IDEM—*Idem.*—Relief will always be granted where failure to defend at law resulted from the acts or representations of the opposite party, or his agents, or from fraud, accident, surprise, or other adventitious circumstance beyond complainant's control. *Holland and Wife* v. *Trotter*, 22 Gratt. 141.

4. IDEM—*Idem—Case at bar.*—B makes a note which is endorsed by M, and discounted by bank. For non-payment at maturity, note is protested and suit brought on it. Maker makes partial payment, and payment of balance is extended to a given day. Payment not being made at said day, suit is again brought. Endorser is a non-resident, but is induced to accept service of process, without information of the partial

payment and extension of time, and judgment is had. Afterwards with knowledge of the partial payment, but in ignorance of the extension of time, endorser executes trust deed to secure the balance. Trustee advertises trust property for sale ; endorser files bill setting up foregoing facts and sale is enjoined.

HELD :

1. The extension of time to maker released endorser.
2. Endorser's failure to defend successfully at law resulting from no *laches* on his part, but from circumstances entitling him to equitable relief, the judgment and the trust deed should be perpetually enjoined.
3. Having executed the trust deed in ignorance that he had been released as endorser by the extension of time, he cannot be considered as having thereby waived the defence.

Appeal from decree of corporation court of Norfolk city. The facts are substantially these :

In 1873 the Mercantile Bank of Norfolk, of which the appellant is now receiver, discounted for appellee, Martin, a note made by D. C. Barrand for $1,562.36, and upon which appellee was third endorser. The note at its maturity was protested for non-payment, and soon thereafter suit was instituted by the bank against the maker and endorsers. After the institution of the suit, the maker paid to the bank, on account of the note, the sum of $114.59, a portion of the principal and the interest on the same to the 12th day of March following; in consideration of which, the time for the payment of the balance was extended until that date, and the suit was dismissed.

At the time of these transactions, the appellee was in the city of New York, of which city he was then, and at the time of the institution of this suit, a resident. At the same time the bank held another note against the same parties for the sum of $1,944.24. In the month of April following, a suit on both notes was instituted by the bank and an attachment against the estate of the appellee, as a non-resident of the State, was sued out. In 'the affidavit made by the president of the bank, and upon which the

attachment was issued, both notes were represented to be wholly unpaid. Service of process was acknowledged by the appellee in New York, who at once wrote to a prominent member of the Norfolk bar to defend him in the action.

When the case came on for trial, upon the testimony of the attorney for the bank, the only witness examined, it appearing that the larger note had been paid, a judgment was entered on the smaller one for the full amount with interest and charges of protest, without any credit whatever.

At that time the appellee had not been informed of the circumstances attending the dismissal of the first suit, and did not know of the partial payment by the maker of the note and the extension granted by the bank.

In the following year, to secure payment of the judgment, he executed a trust deed conveying certain real estate in the county of Norfolk, the bank agreeing to release the lien of the judgment on the remainder of his property.,

At that time he was aware that the partial payment had been made, and recited the fact in the deed of trust; but it does not appear that he then knew of the extension which had been granted in respect to the payment of the balance.

Sometime thereafter the property embraced in the trust deed was advertised for sale by the trustee, when the appellee filed his bill in the court below to enjoin the sale. An injunction was granted, which by a subsequent decree was perpetuated; and from that decree an appeal was allowed by one of the judges of this court.

*W. G. Elliott* and *Harmonson,* for appellant.

*Walke & Old* and *F. S. Blair,* for appellee.

LEWIS, P., delivered the opinion of the court.

After stating the facts, he proceeded:

There is no doubt that, by the indulgence granted the maker of the note, the appellee as endorser thereon was discharged. An endorser of a note is a surety for the maker; and the doctrine is well established that any change in the contract, however immaterial, and even although it be for his advantage, discharges the surety, if made without his consent.

An agreement to give time to the principal gives rise to the presumption that the surety has been delayed or hindered in the use of his rights and remedies, which is absolutely conclusive, and cannot be overthrown by the most convincing proof that nothing has really been lost by the delay. *Green* v. *Biddle,* 8 Wheat. 84; 2 Daniel on Negotiable Instruments, § 1312

This is not denied. But the appellant insists that as the appellee failed to urge it as a defence to the action at law, no case is made for the intervention of a court of equity.

It is well settled that to entitle a party to relief in equity against a judgment at law, it is not sufficient to show merely that injustice has been done; the party applying must show that he has been guilty of no *laches*, and that he has done everything that could be reasonably required of him to render his defence effectual at law. Otherwise relief will be denied; for "it is more important that there should be an end of litigation, than that justice be done in every case." *Wallace* v. *Richmond, Assignee,* 26 Gratt. 67; *Slack* v. *Wood,* 9 Id. 40, and cases cited.

On the other hand, relief will always be granted when it is shown that the failure to successfully defend at law was because of the acts or representations of the opposite party or his agents, or was the result of fraud, accident, surprise, or some other adventitious circumstance beyond

the control of the party complaining. *Holland and Wife* v. *Trotter*, 22 Gratt. 141.

The appellant, however, insists that the bill on its face shows no case for equitable relief, and that it ought to have been dismissed. But no such objection, by demurrer or otherwise, was made in the court below, and it is now too late to urge it. See *Vanlew* v. *Bohannon, &c.*, 4 Rand. 540; *Brickhouse* v. *Hunter, &c.*, 4 H. & M. 363.

Applying these principles to the case before us, we find no error in the decree complained of.

At the time of the transactions which led to the dismissal of the first action at law, the appellee was in the city of New York. Upon the institution of the second suit, he at once applied himself to concerting his defence. Supposing that both notes had, in some way, been wholly or in part discharged, both he and his counsel appear to have diligently exerted themselves to show that fact. He did not then know that a partial payment had been made on the note, or that the time for payment had been extended. He himself testifies that he did not become aware of the fact of the payment until after the judgment had become final, and about the time of the execution of the trust deed; and that he was not informed of the indulgence given the maker of the note until after that time and just before this suit was brought. His counsel, W. H. C. Ellis, Esq., testifies as follows: "I had no knowledge that there had been any partial payment made on the note, or that the time had been extended. . . . I am confident that Martin was as much in the dark as I was on that subject. I was on the alert for a defence to both notes, and so was. Martin. I consider it impossible that I should have omitted to use such a defence if Mr. Martin or I had known of it." No witness on the other side testifies to the contrary. Gilbert Elliott, the former cashier of the bank, was examined, and while expressing the belief that Martin had been

informed of the extension, declined to swear to it as a positive fact. Warren G. Elliott, the attorney for the bank, was also examined, and his statement is in the record. He was familiar, he says, with all the circumstances attending the dismissal of the first suit—the partial payment and the indulgence granted the maker of the note—and thinks he wrote them fully to Martin when he enclosed him a copy of the summons in the second suit, and requested him to accept service. He does not, however, state positively that he did, and the probability is that he did not. It is certainly not usual for an attorney, when requesting a party to accept service of process, to inform him at the same time of a conclusive defence to the suit against him. Moreover, when he afterwards testifies as the sole witness in the case, upon whose evidence the judgment was obtained, he wholly failed to state that the note was subject to a credit, or that an extension of payment had been agreed upon with the maker, notwithstanding his familiarity with all the circumstances attending the dismissal of the first suit. These facts might have been established by the officers and books of the bank; and Ellis testifies that he proposed to summon the cashier and directors to appear at the trial with the books, but abandoned the idea when told, several times before the trial, by Elliott, the attorney for the bank, that he could prove nothing by them, and that he (Elliott) knew as much about the matter as they did. The maker of the note was absent from Norfolk, and no effort was made by the appellee to secure his attendance as a witness in the case. But had he been summoned, there was no reason to suppose, after what had been said by the attorney for the bank, that he knew more about the case than could be derived from the officers and books of the bank; and we think, therefore, that the appellee ought not to be prejudiced by his failure to secure his testimony.

In respect to the effect of the trust deed, it is sufficient to say that it was executed in ignorance of the fact that the appellee had been released as endorser on the note by the indulgence granted the maker, and cannot, therefore, be held as a waiver by him of that defence. A waiver is the *intentional* relinquishment of a *known right*, and there must be both *knowledge* of the existence of the right and an *intention* to relinquish it. *Hoxie* v. *Home Ins. Co.*, 32 Conn. 21.

We are satisfied, by the evidence in the cause, that the appellee has been guilty of no *laches;* that he has done all that can reasonably be required of a party to make effectual his defence at law; that at the time the judgment against him was rendered, and afterwards when the trust deed to secure it was executed, he did not know of the defence of which he seeks to avail himself in this suit, and that the decree of the court below is plainly right, and must be affirmed.

LACY and HINTON, J's, dissented.

DECREE AFFIRMED.