# Richmond.

CHRISTIAN & GUNN V. KEEN.

APRIL 2nd, 1885.

1. MARRIED WOMEN—*Separate Estate—Alienation.*—A wife may make her separate estate liable for the debts of herself, her husband or any other person, unless the instrument creating the estate, expressly or impliedly, denies or limits such power, but the intention so to deny or limit must be clear. *Bain & Bro.* v. *Buff*, 76 Va. 371.

2. IDEM—*Conveyances for advances to husband.*—Where real estate is granted to a trustee for separate use of married woman, free from her husband's debts, to be disposed of upon her written request, for reinvestment, the proceeds to be held for her benefit upon like restrictions, and she, her husband and her trustee unite in deed conveying the property to secure advances of money to be made by another to her husband, she has the power of alienation, and the grant of special power to dispose of the property in a particular manner, does not divest her of her general power to dispose of it in any other manner. *Finch* v. *Marks*, 76 Va. 207.

3. IDEM—*Settlement to secure home.*—But where the settlement is not only to provide, but *to secure a home* for the wife and her children, the intention is manifest to withhold the power of alienation. *Bank of Greensboro* v. *Chambers*, 30 Gratt. 202.

4. PRINCIPAL AND SURETY—*Change of contract.*—Surety is discharged by any change of contract, however immaterial, if made without surety's consent. *Dey* v. *Martin*, 78 Va. 1.

5. MARRIED WOMEN—*Husband—Surety.*—Where the wife charges her property to secure a debt of her husband, she becomes the surety of her husband, and is entitled to all the rights of a surety. *Nermcewicz* v. *Gahn*, 3 Paige, 614.

6. NEGOTIABLE INSTRUMENTS—*Acceptance—Payment.*—Payment, not ac-

VOL. LXXX—47

ceptance merely, entitles acceptor to sue the drawer. *Braxton* v. *Willing, Morris & Co.*, 4 Call, 288.

7. CASE AT BAR.—A credit on the account of the principal debtor should discharge *pro tanto* the lien on the surety's estate.

Appeal from decree of corporation court of town of Danville, entered September 6th, 1882, in an injunction suit, wherein Mary V. Keen, widow of John T. Keen, deceased, was plaintiff, and Edward D. Christian and Thomas H. Gunn, partners in the name of Christian & Gunn, were defendants. Mrs. Keen owned real estate in Danville, which had been conveyed to a trustee on the following terms: "For the separate use of the said Mary V. Keen, wife of John T. Keen, free from all debts of her husband; and if at any time she shall consider it to her interest to sell, or otherwise dispose of the said lot of land, and invest the proceeds thereof in other real or personal estate, the said trustee, whenever she shall signify in writing, her wishes in relation to such sale or other investment of the said property, shall make such sale or other investment, the proceeds thereof to be held by him for her like benefit, upon like conditions and with like restrictions as those first mentioned in this instrument."

John T. Keen, in 1876, bargained with Christian & Gunn to ship to them at Richmond, to be sold on commission, all tobacco bought by him, with such advances as they should make to him during that year. And in consideration of such advances, John T. Keen, his wife and her trustee, executed a deed dated 29th February, 1876, conveying said property to a trustee to secure any sums which might be due Christian & Gunn, after applying the proceeds of sale of the tobacco to the repayment of such advances. This arrangement proved successful. At the end of the year it was renewed until March 1st, 1878, and a similar deed was executed by the same parties on March 1st, 1877. The transactions of this year resulted in a balance of about $6,000 due from John T. Keen to Christian &

Gunn. The trustee in the last deed was proceeding to sell the property when he was enjoined by Mrs. Keen, her husband having died in the meantime. In her bill, she denied that she had the power, under the settlement, to execute the said deeds. She claimed that there had been no proper settlement of the accounts between her husband and Christian & Gunn; that a part of the balance for which the sale was to be made had accrued in the preceding year, and was not covered by the second deed; and that the terms of the arrangement had been changed without her knowledge or consent, and that she had thereby become discharged, she and her property being only surety.

The injunction was perpetuated, and from the decree so perpetuating the injunction, Christian & Gunn obtained an appeal to this court.

*Christian & Christian* and *W. W. Gordon*, for the appellants.

*Peatross & Harris*, for the appellee.

LEWIS, P., delivered the opinion of the court.

It appears from the deed of settlement, a copy of which is exhibited with the bill, that the property was conveyed "to be held in trust * * for the separate use" of the wife, "free from all debts heretofore contracted, or which may hereafter be contracted" by her husband. It is very clear that this languge, standing alone, would confer on the wife not only a separate estate, but the power of alienation; that is to say, it would empower her to dispose of the rents, issues and profits, in the same way as if she were a *feme sole*, and to dispose of the *corpus* of the estate by will, or in the mode prescribed by law for the alienation of real estate by married women. The *jus disponendi* is an incident to such estate, and may be exercised by the wife, unless restrained expressly or impliedly by the instrument creating the estate. She may therefore encumber the trust sub-

ject, in the absence of such restraint, as well for the payment of her husband's debts as her own, notwithstanding, as in the present case, it is in terms directed to be held by the trustee free from the debts of the husband.

In *Vizonneau* v. *Pegram*, 2 Leigh, 183, certain personal property was bequeathed to a trustee "to be held in trust" as the separate estate of the testator's daughter, a married woman, free from the marital rights of her husband. It was decided by this court, reversing the decree of the lower court, that she had the power to dispose of the bequest in the same manner as if she were a *feme sole*.

In the recent case of *Averett* v. *Lipscombe*, 76 Va. 404, a testator devised property, "to be settled to the separate use" of a married woman, "so that neither said property, or its proceeds, nor profits, shall be liable for the contracts or debts of her husband." Construing this language, the court said: "The first branch of the sentence alone was sufficient to create a separate alienable estate. In *Tullett* v. *Armstrong*, 1 Beavan, 1, so often cited with approbation by this court, Lord Langdale lays down the following as one of the rules deduced from the authorities: 'If the gift be made for her [the wife's] sole and separate use, without more, she has during the coverture an alienable estate independent of her husband.' It is very common, however, to add some such words as are found in the latter branch of the sentence, 'so that neither said property, or its proceeds, nor profits, shall be liable for the contracts or debts of her husband.' They are added *ex abundanti cautela* to exclude in terms the rights of the husband, not to limit the powers of the wife. As said by Lord Eldon, in *Parks* v. *White*, 11 Ves. 222, in reference to other words relied on in argument as restrictive, they are 'only the unfolding of all that is implied in a gift to the separate use.' "

These principles are firmly established as the law of this state, by numerous decisions of this court. *Penn* v. *Whitehead*, 17 Gratt. 503; *Muller* v. *Bayly*, 21 Id. 521; *McChesney* v. *Brown's*

*heirs,* 25 Id. 393; *Burnett & wife* v. *Hawpe's ex'or,* Id. 481; *Darnall & wife* v. *Smith's adm'r,* 26 Id. 878; *Burging* v. *McDowell,* 30 Id. 236; *Justis* v. *English,* Id. 565; *Garland* v. *Pamplin,* 32 Id. 305; *Frank & Adler* v. *Lilienfield,* 33 Id. 377; *Bain & Bro.* v. *Buff's adm'r,* 76 Va. 371; *Finch* v. *Marks,* Id. 207.

In the present case, however, in addition to the language already quoted, the deed of settlement contains the following provision: "And, if at anytime, the said Mary V. Keen shall consider it to her interest to sell, or otherwise dispose of the said lot of land, and invest the proceeds thereof in other real or personal estate, the said W. W. Keen, Jr., trustee as aforesaid, whenever the said Mary V. Keen shall signify in writing her wishes in relation to such sale, or other investment of the said property, shall make such sale or other investment, the proceeds thereof to be held by him for the like benefit of the said Mary V. Keen, upon like conditions, and with like restrictions, as those first mentioned in this instrument."

It is insisted by the appellees that the effect of this language is to exclude the power of alienation, except for the purpose of reinvestment, and that the mode of alienation thus prescribed is in exclusion of any other, on the principle of *expressio unius est exclusio alterius.* An opinion in favor of this rule of construction was expressed by Judge Tucker in *Williamson* v. *Beckham,* 8 Leigh, 20. But in the case of *Lee* v. *The Bank of the U. S.,* which soon afterwards arose, and is reported in 9 Leigh, 200, the contrary doctrine was held by the court. In that case certain real estate was conveyed to a trustee for the separate use of Mrs. Lee, and after her death for the use of her husband; and lastly, after his death, for the use of her devisees or heirs, to be conveyed to them in such portions as she by her will should direct, or as the law of the land should determine. The wife afterwards united with her husband in a deed of trust on the land, to secure the payment of a debt due by him to the Bank of the United States. And, the question was, whether the express power to devise the estate took from her the power

to convey it by deed in her life-time. The opinion was delivered by Judge Cabell, who said: "I cannot perceive the force of the argument which infers diminution of power from its extension. I cannot perceive how the express grant of a power which the wife without such grant *had not*, can be made to take from her a power which she *had*, without the grant and independent of the grant. * * Admitting that *expressio unius est exclusio alterius* when personal estate is the subject, I think that the argument founded on it, when applied to real estate, fails to prove that which it is adduced to prove. Let it be remembered that a *feme covert* is under a legal disability to convey by her *own sole act in any form* her separate *real* estate in cases where the instrument giving her the estate is silent as to the power of alienation. The express grant of a power to convey the estate in a particular form is therefore nothing more than a dispensation from one species of disability; and if there is any force in the argument founded on the maxim *expressio unius*, etc., its sole tendency is to exclude the dispensation from all other disabilities, and therefore to leave all other disabilities in full operation. But the implied, or even express permission of existing legal disabilities to remain in force, is no proof of intention to take away existing legal rights; one of which, in the case of a married woman, is the right to convey her separate real estate with the concurrence of her husband." It is to be observed that that case arose before the passage of the statute allowing a married woman to devise her separate estate, and was heard by three judges only, one of whom, Judge Tucker, dissented. But in the later case of *Woodson* v. *Perkins*, 5 Gratt. 345, the same doctrine, it would seem, was held in the unanimous opinion of the court, delivered by Judge Allen. It is true that in some of the cases subsequent to the one last mentioned, the question is referred to as "still unsettled." But after all, it is a question of construction, to be determined on the particular facts and circumstances of each case, remembering that while in the creation of a separate estate, restrictions

on the power of alienation, express or implied, may be imposed, the intention to do so must, in either case, be clear. *Bain & Bro.* v. *Buff's adm'r, supra; Frank & Adler* v. *Lilienfeld, supra; Finch* v. *Marks,* 76 Va. 207.

In the present case the wife is the sole beneficiary in the deed of settlement. The property is conveyed for her exclusive benefit; nor is its management and control confided to the trustee. The case is therefore unlike the case of the *Bank of Greensboro* v. *Chambers,* 30 Gratt. 202. There the intention to withhold the power of alienation was implied from the manifest purpose of the deed of settlement, not only to provide, but *to secure a home* for the wife and her children. And substantially the same may be said of the cases of *Nixon* v. *Rose,* 12 Gratt. 425; *Ropp* v. *Minor,* 33 Id. 97; *Bailey* v. *Hill,* 77 Va. 492, and other similar cases to which counsel have referred. Here, as we have seen, the legal effect of the language by which the trusts are declared is to give to the wife the power of alienation; but not the power to dispose of the *corpus* of the estate in her lifetime, except by deed with the concurrence of her husband. And this we are to presume the grantors knew, for such is the settled law of the state. It was natural, therefore, that, having conveyed the property for her sole benefit, and having invested her with the discretion to determine for herself the propriety of a sale and a reinvestment of the proceeds, they should empower her by her sole act, independent of her husband, to effectuate her wishes in these particulars. Accordingly, the provision was added, which requires the trustee, upon her written instructions, to sell and make reinvestment according to her directions. It might happen that she should deem it to her advantage to sell the property for the purpose of reinvestment, and yet, without this additional provision in the deed, she would be powerless to do so, in the event of the inability or refusal of her husband to unite with her in a deed of conveyance. It was doubtless for this reason that the special power was conferred. But does the grant of the special power

take from her any power that she already had? We think not. There is nothing in the deed or the surrounding circumstances to warrant the conclusion that such was the intention of the parties. The principle affirmed in *Lee* v. *The Bank, supra,* is decisive of the question before us, and consequently the trust deed of March 1st, 1877, constitutes a valid and binding incumbrance on the property in question.

The appellees, however, insist that, conceding this to be so, the lien was discharged by a change in the contract between the appellants, on the one hand, and the husband of the female appellee on the other. It is well established, that a surety is discharged by any change in a contract for which he is bound, if made without his knowledge or consent. And this is so, even though the change be for the surety's benefit; for he has a right to stand upon the very terms of his contract, and can not be held liable otherwise than he has contracted. *Callaway's ex'or* v. *Price's adm'r,* 32 Gratt. 1; *Dey* v. *Martin,* 78 Va. 1; *Miller* v. *Stewart,* 9 Wheat. 680; *Smith* v. *United States,* 2 Wall. 219. And it is equally well established that, where a wife creates a lien on her own property as security for the payment of a debt of her husband, she occupies the position of a surety for her husband, and is entitled to all the rights of a surety. *Nermcewicz* v. *Gahn,* 3 Paige, 614—affirmed on appeal, 11 Wend. 312.

Here it is claimed that a quantity of tobacco, which under the contract between the parties ought to have been shipped to this city for sale by the appellants, was, without the knowledge or consent of Mrs. Keen, shipped to Durham, in the state of North Carolina, and there sold. But this position is not sustained by the proofs. It appears that the tobacco shipped to North Carolina was not purchased with moneys advanced by the appellants during the year beginning on the 1st day of March, 1877, but was purchased during the preceding year, and was therefore properly carried into the accounts between the parties for that year.

Objection is also made to several items in the appellants' accounts aggregating the sum of $3,400. This sum represents the amount of four drafts drawn by the husband of the female appellee on the appellants, and were accepted by them for the accommodation of the drawer. They were drawn and accepted prior to. but fell due and were paid after, the 1st of March, 1877, and were therefore properly charged in the accounts as of the date of their payment. And it matters not that they were discounted in bank for the drawer before their maturity; for until they were actually paid there was no cause of action against the drawer on the part of the appellants, and from that time only did interest and the statute of limitations begin to run. This is well settled.

In his work on Negotiable Instruments, Mr. Daniel says: "If the acceptance be for the drawer's accommodation, the acceptor does not thereby become entitled to sue the drawer upon the bill; but when he has paid the bill, and not before, he may recover back the amount from the drawer in an action for money had and received." 1 Daniel on Nego. Instruments, sec. 532. In *Braxton* v. *Willing, Morris & Co.* 4 Call, 288, it was held that the acceptance of a bill does not entitle the acceptor to charge it in account against the drawer from the date of acceptance, unless he pays the whole money at the time. See also *Whitwell* v. *Brigham*, 19 Pick. 117; *Henderson* v. *Thornton*, 37 Miss. 448; *Snydam* v. *Combs*, 3 Green (N. J.), 133; *Parker* v. *United States*, Pet. C. C. 262.

There is, however, an admitted error in the accounts of $1,116.57, which sum represents a credit on the books of the appellants in favor of J. C. Skinner & Co., and which ought to have been credited to the account of J. T. Keen, as a discharge *pro tanto* of the lien on the wife's estate. The accounts will therefore be corrected in this particular, and the balance claimed to be due by the appellants, less the said sum of $1,116.57, will be the true amount for the satisfaction of which the appellants are entitled to enforce the trust deed of March 1, 1877.

The decree of the corporation court must therefore be reversed, and a decree entered here in accordance with the foregoing views.

LACY, J., dissented.

DECREE REVERSED.