## UNITED STATES GLASS CO. v. WEST VIRGINIA FLINT BOTTLE CO.[1]

### (Circuit Court, D. West Virginia. April 2, 1897.)

1. CONTRACT—ALTERATION—WHAT IS—SURETIES.
   Plaintiff, by written agreement, licensed defendant company to use certain machines in consideration of paying royalty, and defendant gave bond, with sureties, conditioned for the performance of the contract. Afterwards the president of defendant company interlined in the contract a provision as to the time of delivery of the machines, which was accepted and acquiesced in by plaintiff. *Held*, that this interlineation was an alteration of the contract so far as the sureties in the bond were concerned.

2. SAME—IMMATERIAL—DISCHARGE OF SURETIES.
   When a bond with sureties is given for the faithful performance of a contract, and the parties to the contract afterwards make an alteration therein without the consent of such sureties, the latter are discharged, whether the alteration is a material one or not. Mersman v. Werges, 5 Sup. Ct. 65, 112 U. S. 139, distinguished.

3. SAME—WHAT IS MATERIAL.
   A license for the use of certain machines provided that the licensee might call upon the licensor "for as many additional machines as the licensee deemed expedient," but the time of delivery was not fixed. The parties inserted in the contract, after it was executed, a provision that "said machines shall be shipped to the licensee within thirty days after written notice is given to the lessor." *Held*, that this was a material alteration in the contract.

A. J. Clarke and Henry M. Russell, for plaintiff.
Vinson & Thompson and Campbell & Holt, for defendant.

JACKSON, District Judge. This is an action of debt, founded upon a penal bond executed by the defendant company as principal, and five securities, who, by the condition of the bond, become responsible for the payment by the defendant company to the plaintiff of a certain license fee or royalty for the use of certain machines, as it appears from a contract entered into between the parties on the 22d day of November, 189—, which is attached and referred to in the bond, and made part of it. To the declaration of the plaintiff the defendant company as well as the other defendants file, with other pleas, not now necessary to notice, pleas of "non est factum," upon which issue is joined, and which is now heard.

[1] Reported by Benj. Trapnell, Esq., of the Charleston bar.

The question raised by the plea and relied on by the defendant to defeat this action is whether an alteration of the contract in the absence of and without the assent of some of the parties to it, renders it void. · It appears that after the bond had been executed by the defendant company, with H. E. Mathews, T. H. Cox, J. A. Cross, George McKendree, and Z. T. Vinson as sureties, Cox, who was the president of the company, without the knowledge or consent of his co-sureties, altered the agreement between the two companies which was attached to the bond as a part of it, by interlining the following words in pencil writing: "Said machines to be shipped to said licensee within thirty days after written notice is given to said licensor," and delivered the same to Mr. Ripley, the president of the plaintiff company, who had the words so interlined typewritten on a slip of paper, which was pasted on the margin of the contract, and made to cover the interlineation.    After this interlineation the defendant company failed to pay the fees for the use of the machine according to the provision of the contract, and the plaintiff brought this action.

The question of fact set up in the pleas is not disputed, but the question of law arising upon the pleas is strongly contested.    Conceding the fact to be true as claimed by the defendants, are they released from their liability under the contract?    It is insisted that the interlineation, as well as the copy of it in typewriting, attached to the contract, is no part of it, and therefore no alteration.    The answer to this position is that this alteration was made by one of the parties to the contract, and acquiesced in by the president of the plaintiff company, the other party to the contract, and thereby became as much a part of the contract as any other provision in it.    At least, by adopting it, they considered it a material alteration.    That there was an alteration I do not think admits of a doubt, but it is insisted that the alteration must be material to avoid the contract.    Is this position tenable?    Upon this question the authorities are conflicting, and, in fact, there seems to be two distinct lines of decision. The early rulings of the courts seem to hold that any alteration of a contract, however immaterial, after its execution, in the absence of either party to it, avoids it.    In support of this position there is a long line of authorities, commencing as far back as the days of Lord Coke.    Ever since Pigot's Case, 11 Coke, 27, it has been the settled doctrine of the common law that any alteration in a deed, whether material or immaterial, if made by one party to it without the concurrence or authority of the other party, will avoid the deed, and sustain a plea of non est factum,—First, because the alteration must effect the question of identity: and, second, because such an unauthorized act of a party having the custody of a deed should be construed most strongly against himself, and, if legalized, might facilitate injury and irremediable fraud.    Robertson, J., Johnson v. Bank, 2 B. Mon. 311.    This ruling seems to have been followed in many states, and in Virginia it seems to be well-settled law. In West Virginia, so far as I can find, the question raised in this case has not been passed upon.    In Dey v. Martin, 78 Va. 1, it was held that "it is well settled that any change in the contract, made

without surety's consent, however immaterial, and even if for his advantage, discharges him." So in Christian v. Keen, 80 Va. 369, it was again held that the surety was discharged by any change of the contract, however immaterial, if made without the surety's consent. In the case of Miller v. Stewart, 9 Wheat. 681, Judge Story, speaking for the court, said:

"Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may be even for his benefit. He has the right to stand upon the very terms of his contract; and, if he does not assent to a variation of it, and a variation is made, it is fatal."

In support of this position I cite Smith v. U. S., 2 Wall. 219; Reese v. U. S., 9 Wall. 13, 22; Stephens v. Graham, 7 Serg. & R. 505; Walton v. Hastings, 4 Camp. 223; Jacobs v. Hart, 2 Starkie, 45; Outhwaite v. Luntley, 4 Camp. 179; Master v. Miller, 4 Term R. 320, 2 H. Bl. 140; Britton v. Dierker, 46 Mo. 592; Owings v. Arnot, 33 Mo. 406. To this class of cases others might be added to sustain this position. If, therefore, the case rests upon the authorities cited, it follows that the securities must be released, and that the contract is void as to them.

But it is strongly insisted, with some show of authority, that the alteration must be material, and that the later adjudication of the supreme court sustains that position. In the case of Wood v. Steele, 6 Wall. 80, Mr. Justice Swayne says:

"It is now settled in both English and American jurisprudence that a material alteration, without the consent of the party sought to be charged, extinguishes his liability."

While this case does not decide in express terms that the alteration should be material, yet the language used by the learned judge would seem to indicate that it should be material to avoid the contract. But the case in 9 Wall., supra, decides that "any change in the contract on which they are sureties, made by the principal parties to it without their consent, discharges them, and for obvious reasons. When the change is made they are not bound by the contract in its original form, for that has ceased to exist. They are not bound by the contract in its altered form, for to that they have never assented." It is, however, suggested that the case under consideration falls within the ruling of the court in the case of Mersman v. Werges, 112 U. S. 139, 5 Sup. Ct. 65, and that it holds that the alteration must be material, and, being the latest of all the decisions of the supreme court, that it should be considered as establishing the law as laid down by that tribunal. I do not so understand that case. The only question in that case considered by the court was whether the addition of a single name as surety to a note was an alteration of the contract. The court decided, as the addition of the name of the surety did not change its terms, and did not either increase or diminish the liability of the maker, that it was not such an alteration as discharges the maker, for the reason assigned. While I am inclined to think that the reasoning of the court would strongly

indicate that the alteration must be a material one, and, if material, would avoid the contract, it seems to me, however, that the point was not ruled in that case, and that all that was said in the opinion of the court upon that point must be regarded as obiter.

From what has been said it will be observed that I reach the conclusion that any alteration of a contract, whether material or immaterial, if made after its execution, in the absence or without the assent of any of the parties to it, will avoid it, for the reason assigned by that eminent jurist, Justice Story, in Miller v. Stewart, 9 Wheat. 681, where he says that "a party has a right to stand upon the very terms of his contract; and, if he does not assent to any variation of it, and a variation is made, it is fatal." But, if this conclusion is incorrect, still I am of the opinion that the plea must be sustained, for the reason that there was a material alteration. It is apparent to my mind that this alteration increased the liability of the defendant company (and, as a consequence, the liability of the sureties was extended), inasmuch as it enabled the plaintiff company to ship additional machines more promptly and more frequently under the new provision of the contract than was contemplated under the contract as originally executed, and which the plaintiff company would, as a purely business matter, be anxious to do. By the terms of the contract the licensor had the right to call upon the licensee "for as many additional machines" as the licensee deemed expedient. Under this provision of the contract no limitation as to the number of machines was imposed. The licensor was at the mercy of the licensee as to the number that might be demanded. It is true that the contract provided for additional machines when they were required by the defendant, but the time of delivery was not fixed. It must be assumed that this provision of the contract contemplated a reasonable demand for extra machines to be furnished in a reasonable time, and that reasonable time would always be an open question between the parties, and might (as often occurs under contracts loosely drawn) give rise to litigation. If the execution of an order for machines was long delayed, of course the liability of the sureties would be postponed, and by the time the license expired might be comparatively small. If this position is not correct, the licensee might serve a notice every day in the week for extra machines. Would this be reasonable, under the terms of the original contract? I think not. If unreasonable, would not such a demand every 30 days extend the liability of the sureties? And, if so, it must avoid the contract as to them. Under the original contract, an order made for the machines might be so long delayed in its execution that the failure to deliver them promptly necessarily postponed the time of payment, whereby they become less frequent. If, however, there was a demand made for extra machines every 30 days under the contract as amended, payments for them would be required, and the liabilities of the sureties largely extended. This amendment had in view a specific purpose, which was to provide for what I regard as an important omission in the original contract. If it became important to supply that omission, it must be held to be material, otherwise no necessity existed for the inser-

tion of this provision in the contract. The fixing the time of delivery upon 30 days' notice, upon which the original contract was silent, which might have been given daily for every 30 days during the life of the license, would clearly extend and increase the liability of the sureties. I am therefore forced to the conclusion that the amendment was material, and that the plea of non est factum must be sustained, and judgment entered for the defendants.